408 P.2d 910

**UNION PACIFIC RAILROAD COMPANY,**
Plaintiff and Appellant,

v.

**EL PASO NATURAL GAS COMPANY,**
Defendant and Respondent.

No. 10361.

Supreme Court of Utah.

Dec. 15, 1965.

———◇———

Bryan P. Leverich, A. U. Miner, Howard F. Coray, Scott M. Matheson, Norman W. Kettner, Salt Lake City, for appellant.

Skeen, Worsley, Snow & Christensen, Salt Lake City, for respondent.

CROCKETT, Justice.

Plaintiff, Union Pacific Railroad Company, seeks payment under an indemnity covenant from the defendant, El Paso Natural Gas Company, for damages which the plaintiff paid to one of defendant's employees who was struck by the plaintiff's train. Upon the basis of the pleadings, mutual responses to discovery procedures and documentary evidence, the district court granted defendant's motion for summary judgment, from which plaintiff appeals.

The judgment is grounded on a determination that the language of the indemnity covenant upon which plaintiff relies does not require defendant to reimburse plaintiff for losses occasioned by its own negligence. Where the interpretation of a document was thus dispositive of the case, the use of the summary judgment procedure was particularly appropriate because it saved the time, effort and expense of a trial.[1]

In 1956 the defendant, El Paso Gas Company (its predecessor, Pacific Northwest Pipeline) in order to construct a pipeline generally parallel to the plaintiff's tracks from the oil and gas producing areas of the intermountain region to the Pacific northwest, acquired easements over some of the plaintiff's property. The parcel with which we are concerned is a strip 50 feet wide by about two and one-half

1. See Brandt v. Springville Banking Co., 10 Utah 2d 350, 353 P.2d 460.

miles long in Lincoln County, Wyoming. After negotiations and discussions between the parties, which included the expressed desire of the Union Pacific to protect itself against any damage or liability that might arise by reason of the pipeline, it conveyed the right of way to the defendant for the sum of $826.97. It contained an agreement that the defendant would indemnify the Union Pacific for any liability or damage it might incur because of the construction or existence of the pipeline.

On November 30, 1963, about seven years after the conveyance was made and the pipeline constructed, the defendant's employee, John E. Stacey, Jr., was driving in a truck over a crossing of the plaintiff's tracks, at that point about a mile and a half from the pipeline, for the purpose of doing some maintenance work on it, when he was struck by the plaintiff's train. He suffered extensive injuries the detail of which is not material here. It is sufficient to state that their description would sear the sensibilities of a normal person, and that they left him an almost completely paralyzed quadriplegic.

Mr. Stacey filed suit against Union Pacific seeking recovery on the ground of the latter's negligence in injuring him. Union Pacific, relying on the indemnity provision, advised El Paso that it would hold the latter responsible and requested that it defend or assist in defending the suit. El Paso refused. Before the Stacey suit came to trial, Union Pacific settled it for $340,000.

In support of its claim for indemnification from the defendant, Union Pacific urges that it was its desire, and that the defendant agreed: that as a condition to granting the right of way it was to be protected just as though the pipeline did not exist. The specific language upon which this contention is based is that the defendant would indemnify and hold the Union Pacific harmless:

* * * from and against *any and all liability,* loss, damage, claims, * * * *of whatsoever nature,* * * * growing out of injury or harm to or death of persons whomsoever, or loss or destruction of or damage to property whatsoever, including the pipe line, when such injury, harm, death, loss, destruction or damage, *howsoever caused,* grows out of or arises from the bursting of or leaks in the pipe line, or *in any other way whatsoever is due to or arises because of the existence of the pipe line* or the construction, operation, maintenance, repair, renewal, reconstruction or use of the pipe line or any part thereof, or to the contents therein or therefrom. (Emphasis added.)

Plaintiff places stress upon the emphasized phrases and argues that they show a clear intent that there be no limitation to

losses which could be classified as "proximately" or "legally" caused by the pipeline, but that the indemnity obligation was unlimited, encompassing any loss which would not have occurred "but for" the existence of the pipeline; that accordingly, it would cover the damage paid to Mr. Stacey because "but for" the pipeline he would not have been present on its tracks at the time and place he was struck.

It may be true that in the broadest possible sense "but for" the existence of the pipeline, Mr. Stacey would not have been at the crossing at that particular time, and the accident would not have happened. But this can also be said of a great many antecedent facts which may have delayed or changed his course of conduct. For instance, it could always be said that "but for" the fact that a person got out of bed in the morning an occurrence of the day would not have happened to him. Likewise, this would be true "if he had never been born," on back to "if Adam and Eve had never left the garden," some particular thing would never have occurred, all of which would have no legally cognizable causal relationship to the incident.

To illustrate by an example closer to our own facts: suppose Mr. Stacey had lived in New York; that he had been requested by El Paso to come to Wyoming to do some job on the pipeline; and that in traveling through some distant city, say Chicago, he had been injured. It could be said that "but for" the existence of the pipeline, he would not have been hurt in Chicago at that particular time. Or, in the same example, suppose he had finished his work on the pipeline, and proceeding on his trip westward through Salt Lake City, was just in time to be hit by a truck at an intersection. Again it is true that "but for" the pipeline and his diversion there he would not have been at the time and place to be hit by the truck. Such examples could be varied or extended in time and distance to demonstrate the existence of the pipeline to be so remote and coincidental to the incident that it would be unreasonable to conclude that it had any substantial relationship to its causation. The same principles apply to our case even though the crossing was only about a mile and a half from the pipeline.

Reflection upon the examples just recited will expose the fallacy in the plaintiff's all-encompassing "but for" argument as applied to the provisions of this contract; and will reveal that even though plaintiff's rights are not limited by the traditional tort concept of proximate cause, and must be found in the terms of the contract, it is nevertheless necessary that there be some limitation on causation more directly connected with an event than "but for" some existing fact or occurrence the critical incident would not have happened. What is essential is that we call to mind

and apply some fundamentals of contract law.

In resolving a dispute about the interpretation of provisions in a contract the objective is to determine what the parties intended at the time it was executed; and if the intent with respect to some unforeseen subsequent occurrence is not clearly articulated, what would have been their intent if their minds had adverted to such an occurrence. In pursuing the latter alternative, as we are required to do in this instance, there are some further basic principles which are helpful on our problem. The first is that each party is entitled to assume that the other intends to conduct himself as a reasonable and prudent person would under whatever circumstances may thereafter arise, which presupposes that he will commit no wrongful act nor be guilty of negligence.[2]

A closely related proposition pertinent here is that the law does not look with favor upon one exacting a covenant to relieve himself of the basic duty which the law imposes on everyone: that of using due care for the safety of himself and others. This would tend to encourage carelessness and would not be salutary either for the person seeking to protect himself or for those whose safety may be hazarded by his conduct. For these reasons such covenants are sometimes declared invalid as being against public policy.[3] However, this may depend upon the circumstances. The majority rule appears to be that in most situations, where such is the desire of the parties, and it is clearly understood and expressed, such a covenant will be upheld.[4] But the presumption is against any such intention, and it is not achieved by inference or implication from general language such as was employed here.[5] It will be regarded as a binding contractual obligation only when that intention is clearly and unequivocally expressed.[6]

If it had been the intent of the parties that the defendant should indemnify the plaintiff even against the latter's negligent acts, it would have been easy enough to use

2. See Ferguson v. Reynolds et al., 52 Utah 583, 176 P. 267; Boyle v. Baggs, 10 Utah 2d 203, 350 P.2d 622.
3. See Basin Oil Co. of California v. Baash-Ross Tool Co., 125 Cal.App.2d 578, 271 P.2d 122 and cases therein cited; Nashua Gummed & Coated Paper Co. v. Noyes Buick Co., 93 N.H. 348, 41 A.2d 920; Otis Elevator Co. v. Maryland Casualty Co., 95 Colo. 99, 33 P.2d 974; Northwest Airlines, Inc. v. Alaska Airlines, Inc., 351 F.2d 253 (9th Cir. 1965).
4. See Barrus v. Wilkinson, 16 Utah 2d 204, 398 P.2d 207; Griffiths v. Henry Broderick, Inc., 27 Wash.2d 901, 182 P.2d 18, 175 A.L.R. 1; Vinnell Co. v. Pacific Elec. Ry. Co., 52 Cal.2d 411, 340 P.2d 604; 6 Williston, Contracts, Sec. 1751 (b), (Rev. ed.).
5. See Southern Pac. Co. v. Layman, 173 Or. 275, 145 P.2d 295 and cases therein cited.
6. Barrus v. Wilkinson, supra footnote 4; Vinnell Co. v. Pacific Elec. Ry. Co., (Cal.) supra footnote 4.

that very language and to thus make that intent clear and unmistakable, which was not done here.

■ This is pointed up by the plaintiff's own argument. It asserts that the parties in fact discussed the possibility of loss arising from its negligence, and that the agreement was intended to cover such an eventuality. Assuming it to be true that they discussed the matter, this does not strengthen the plaintiff's position, nor does it impair the validity of the trial court's conclusion. If the matter was discussed and was thus in the minds of the parties, this would affirm with greater emphasis that the Union Pacific should have expressly so stated in the contract. This is more especially so because the Union Pacific itself prepared the document, and in case of doubt or uncertainty, it should be construed strictly against it.[7]

■ We further observe that it is not proper to excerpt and consider separately the phrases of the contract upon which plaintiff places emphasis. It will be noted that the protection against "any and all liabilities * * * of whatsoever nature * * *" is stated in connection with "grows out of or arises from the bursting of or leaks in the pipeline" and "arises because of the existence of the pipeline or the construction, operation, maintenance

repair, renewal, reconstruction or use of the pipeline." The fair import of the entire provision, considered together in context as it should be, is that the damages guaranteed against should have at least some causal connection with the construction, existence, maintenance or operation of the pipeline other than an incident which happened merely coincidental to its existence.

■ In accordance with the foregoing discourse it is our opinion that the trial court was correct in concluding that the contract does not require El Paso to indemnify Union Pacific for the type of loss here involved which resulted from its own negligence.

Affirmed. Costs to defendant (respondent).

McDONOUGH, WADE, and CALLISTER, JJ., concur.

HENRIOD, Chief Justice (dissenting).

I dissent and think the language of the indemnity agreement, given in exchange for very valuable pipeline easements, covers a case like this.

I think the attempted examples which the main opinion poses about "but for" a person's getting out of bed in the morning, "but for" the fig-leaf incident, etc., may be an indictment against getting out of bed

7. See Continental Bank & Trust Co. v. Bybee, 6 Utah 2d 98, 306 P.2d 773; Restatement of Contracts, Vol. 1, Sec. 236.

in the morning or against running around catching cold juggling apples, but they are not analogies, since they do not involve an indemnity agreement. I take it that any casualty insurance company, under a written agreement, and for a consideration, as was the case here, would indemnify me against injury whether I got out of bed or not. As to Eve's activities I do not know whether such a company would offer coverage at any price, and it is highly conjectural that the indemnitor insurer would consider the "but for" test as a defense against its contractual liability.

The main opinion talks about the intention of the parties. El Paso solicited U. P., for the pipeline privileges, and signed a comprehensive indemnity agreement to secure those rights. It is inconceivable to me that for some $800 U. P. intended to take a gamble on a $340,000 claim, or a perpetual series of them, under the circumstances of this case. In granting the easements, U. P. also permitted pipeline employees to cross their tracks on a road which was not a public highway, and it appears to me that where such employees' only access to their work the workmen's compensation cases holding that once an employee is headed for work on a road inside or outside the employer's gate, with no other place to go except to his work, he is in the course of his employment, may be akin to this case, which seems to me factually to be little different.