454 P.2d 1010

**SOUTHERN PACIFIC COMPANY, a Delaware corporation, Appellant,**

**v.**

**GILA RIVER RANCH, INC., an Arizona corporation, Appellee.**

**No. 1 CA–CIV 905.**

May 28, 1969.

Court of Appeals of Arizona.

Rehearing Denied June 23, 1969.

Review Granted Sept. 16, 1969.

Evans, Kitchel & Jenckes, by Ralph J. Lester, Phoenix, for appellant.

Jennings, Strouss, Salmon & Trask, by Jon L. Kyl, Phoenix, for appellee.

HATHAWAY, Judge.

This appeal is from a judgment entered in a lawsuit instituted by Southern Pacific to recover from Gila River Ranch for damage to one of the railway company trains. Southern Pacific's claim was predicated on a "Private Road Crossing Agreement."

This 1934 agreement gave a license to Gila River's predecessor in interest, Gillespie Land & Irrigation Co., a corporation, to cross Southern Pacific's railroad tracks at a designated point. The licensee was given permission to construct, maintain and use the private road crossing and was required to maintain and keep the crossing in good repair. The agreement prohibited use of the crossing by any person or persons except the licensee, licensee's family, guests, tenants, employees and business invitees. In 1957 the agreement was assigned to Gila River, with the written consent of Southern Pacific, and Gila River thereby assumed the licensee's rights and duties.

On December 3, 1964, a Southern Pacific train collided with a cotton trailer which had become immobilized on the tracks at the subject crossing. This collision caused damage to the locomotive and demolished the cotton trailer. The railroad company sued the Ranch to recover for its loss occasioned by the collision, claiming it was entitled to indemnification by virtue of the following provision of the crossing agreement:

"Licensee shall and hereby expressly agrees to indemnify and save harmless the Licensor and its lessor from and against any and all loss, damage, injury, cost and expense of every kind and nature, from any cause whatsoever, resulting directly or indirectly from the maintenance, presence or use of said crossing."

The defendant filed a third party complaint against one Parrish, owner of the cotton trailer which collided with the train, and House, the employee-driver. The parties stipulated to certain facts, including the following: That the collision occurred at the railroad crossing which was the subject of the crossing agreement, that Southern Pacific had sustained damages in the amount of $1,535.53, and that prior to the accident, the crossing was owned and maintained exclusively by Southern Pacific. The question of whether the crossing agreement covered losses occasioned by the railroad-indemnitee's negligence was submitted to the court, which ruled that the railroad was not entitled to indemnification for losses caused by its own negligence. The only factual issue was whether any of the parties or their employees were guilty of negligence proximately causing damage to Southern Pacific. At the request of the plaintiff, two interrogatories were submitted to the jury:

"Interrogatory No. 1: Was plaintiff negligent in the operation of its train?

"If the above question is answered in the affirmative, was such negligence a proximate cause of the collision?

"Interrogatory No. 2: Was plaintiff negligent in failing to maintain the private road crossing?

"If the above question is answered in the affirmative, was such negligence a proximate cause of the collision?"

The jury answered Interrogatory No. 1 in the negative and both parts of Interrogatory No. 2 in the affirmative. It was instructed that the crossing agreement did not allow Southern Pacific to be indemnified for damages proximately caused by its own negligence. Three forms of verdict were submitted to the jury: (1) Finding for Southern Pacific and against Gila River in the original action and for Gila River and against third-party defendants in the third-party action; (2) Finding for Gila River and against Southern Pacific; and (3) Finding for Southern Pacific against Gila River in the original action and for third-party defendants in the third-party action.

As noted above, the jury found that Southern Pacific was negligent in maintaining the road crossing and that such negligence was the proximate cause of the accident. It returned a verdict in favor of Gila River and against Southern Pacific. Southern Pacific, pursuant to Rule 50(b), as amended, Rules of Civil Procedure, 16 A.R.S., moved for judgment in its favor contending, inter alia, that the jury's response to the interrogatories compelled judgment in its favor. In other words, its position was that the finding of negligent maintenance brought the loss within the ambit of the crossing agreement. Judgment was entered in favor of Gila River and the third-party complaint against Parrish and his employee was dismissed.

The sole question presented is one of contract interpretation. The trial judge was of the opinion that Southern Pacific was under a duty to maintain the crossing without negligence on its part, such duty extending to Gila River and the third-party defendants. He therefore ruled that the indemnity agreement did not cover losses occasioned by Southern Pacific's negligent maintenance, if such negligence was established.

In Graver Tank & Manufacturing Company v. Fluor Corporation, Ltd., 4 Ariz. App. 476, 421 P.2d 909 (1966), we held that express reference to the indemnitee's negligence is not necessary to cover losses occasioned thereby if the language of the indemnity contract manifests the parties' intent to include the negligent act of the indemnitee. In Graver, the language of the contract provided that Graver would indemnify Fluor " * * * from all claims * * * of whatever nature arising out of the services, labor, equipment and materials furnished by * * * " Graver and that Graver assumed " * * * entire responsibility and liability for all losses * * * in connection with or arising out of any injury * * * sustained in connection with or arising out of the performance * * * " of Graver's work. (421 P.2d at 911.)

Other courts have likewise rejected the "express negligence" doctrine. See e. g., Metropolitan Paving Company v. Gordon Herkenhoff & Associates, 66 N.M. 41, 341 P.2d 460 (1959); District of Columbia v. General Heating Engineering Company, 168 A.2d 903 (D.C.1961); Southern Pacific Company v. Morrison-Knudsen Company, 216 Or. 398, 338 P.2d 665 (1959); Atchison, Topeka & Santa Fe Railway Company v. James Stewart Company, 246 Cal.App. 821, 55 Cal.Rptr. 316 (1966); Spence & Howe Construction Company v. Gulf Oil Corporation, 365 S.W.2d 631 (Tex.1963); Jacksonville Terminal Company v. Railway Express Agency, Inc., 296 F.2d 256 (5th Cir. 1961).

■ Although agreements to indemnify for the indemnitee's negligence are not favorites of the law, Union Pac. Railroad Co. v. El Paso Natural Gas Co., 17 Utah 2d 255, 408 P.2d 910 (1965), they are generally enforceable when the parties have equality of bargaining power and their intent as to such indemnification is manifestly plain and unequivocal. Colorado Milling & Elev. Co. v. Chicago R. I. & P. R. Co., 382 F.2d

834 (10th Cir.1967); Jordan v. Eastern Transit & Storage Co., 266 N.C. 156, 146 S.E.2d 43 (1966); Hall v. Sinclair Refining Co., 242 N.C. 707, 89 S.E.2d 396 (1955); *See* also Annot., 175 A.L.R. 8, §§ 6–10.

■ Here, the indemnitee is a railroad. Were an exemption from its own negligence attempted in its capacity as a common carrier, the indemnity agreement would be invalid. Restatement of Contracts § 575. However, such is not the case where the railroad is acting in a private capacity as a property owner. Miller & Co. of Birmingham v. Louisville & N. R. Co., 328 F.2d 73 (5th Cir.1964); Anthony v. Louisiana & Arkansas Ry. Co., 316 F.2d 858 (8th Cir.1963); Colonial Stores, Inc. v. Central of Ga. Ry. Co., 279 F.2d 777 (5th Cir.1960); Ryan Mercantile Co. v. Great No. Ry. Co., 294 F.2d 629 (9th Cir. 1961); Chicago & N. W. Ry. Co. v. Rissler, 184 F.Supp. 98 (D.Wyo.1960); Russell v. Martin, Fla., 88 So.2d 315 (1956); *See* also Annots., 14 A.L.R.3d 446 and 175 A.L.R. 8.

■ In the absence of a statute or agreement, a railroad is under no duty to construct a private crossing. 74 C.J.S. Railroads § 170b; 44 Am.Jur. Railroads § 117. Therefore, in granting to another a right, not owing to the general public, to make use of its right-of-way, it may impose such conditions it chooses in granting permission. Bohannon v. Southern Ry. Co., 97 Ga.App. 849, 104 S.E.2d 603 (1958); Chicago & N. W. Ry. Co. v. Kramme, 244 Iowa 944, 59 N.W.2d 204 (1953); Chicago Great Western Ry. Co. v. Farmers Produce Co., 164 F.Supp. 532 (N.D. Iowa 1958); Russell v. Martin, supra. The crossing agreement herein involved was executed by Southern Pacific as a property owner and not as a common carrier. In view of its right, as a landowner, to impose any conditions it desired in granting permission to cross its property, we do not find the agreement vulnerable because of any disparity of bargaining power. It was an arms-length transaction between two property owners, and the fact that one was a railroad does not alter the situation.

■ The breadth of the language used in the indemnity provision ("all loss * * * of every kind and nature, from any cause whatsoever resulting * * * from the maintenance, presence, or use of said crossing"), giving due consideration to the subject matter and circumstances of the agreement, manifest a clear intention to insure Southern Pacific against *all* losses, not excepting those occasioned by Southern Pacific's negligence.

■ The only one who derived benefit from the crossing agreement was the indemnitor, hence it is quite logical that the railroad, which had nothing to gain, would exact as a condition for the benefit conferred exemption from liability for its own negligence. As stated in Southern Pacific Company v. Morrison-Knudsen Company, supra:

"Under the circumstances, it was only natural and the exercise of sound business judgment that the Railroad would demand protection including the consequences of its own acts." 338 P.2d at 673.

Insurance companies assume liability for losses occasioned by another's negligence and it is common knowledge that the device of insuring against one's own negligence through indemnity contracts is frequently employed in other business ventures. There is no dispute that the insured risk occurred, i. e., damage resulting from the maintenance of the crossing. Since the plain and clear meaning of the language used by the parties evidences an intention to include the indemnitee's negligent acts, we believe the trial court erred in construing the agreement otherwise. The parties having agreed as to the amount of Southern Pacific's loss, the judgment must be set aside with directions to enter judgment in Southern Pacific's favor against Gila River for damages in the amount of $1,535.-53.

The crossing agreement also provides:

"That in case licensor shall bring suit to compel performance of, or to recover for breach of, any covenant, agreement

or condition herein written, licensee shall and will pay to licensor reasonable attorney fees in addition to the amount of judgment and costs."

The pretrial order recites that the parties stipulated that this matter of attorney's fees and their reasonableness would be left for the court to determine at the conclusion of the case, should it be necessary. The cause is therefore remanded for the limited purpose of making this determination.

The judgment is reversed [1] and remanded for further proceedings not inconsistent herewith.

KRUCKER, J., concurs.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

MOLLOY, Justice (dissenting).

I am unable to agree with the majority opinion.

The critical language in this indemnity agreement, and the only language relied upon by the plaintiff, Southern Pacific Company, for recovery, is this:

"Licensee shall and hereby expressly agrees to indemnify and save harmless the Licensor and its lessor from and against any and all loss, damage, injury, cost and expense of every kind and nature, from any cause whatsoever, resulting directly or indirectly from the maintenance, presence or use of said crossing. Licensee expressly waives any and all claims arising from death or injury to Licensee."

This is not the same language construed by this court in Graver Tank & Manufacturing Co. v. Fluor Corp., Ltd., 4 Ariz.App. 476, 421 P.2d 909 (1967). That case was concerned with a contract which read in part:

" '10. CONTRACTOR does hereby indemnify and save harmless FLUOR and OWNER, or either from all claims, demands, causes of action or suits of what-

ever nature arising out of the services, labor, equipment and materials furnished by CONTRACTOR. * * *

" '11. CONTRACTOR assumes entire responsibility and liability for all losses, expenses, damages, demands and claims in connection with or arising out of any injury, or alleged injury, (including death) or damage, or alleged damage to persons or property sustained or alleged to have been sustained in connection with or to have arisen out of the performance of the WORK by CONTRACTOR * * * including losses, expenses or damages sustained by FLUOR or OWNER, and herein indemnifies and holds harmless FLUOR or OWNER, * * * from any and all such losses, expenses, damages, demands and claims, and agrees to defend any suit or action brought against them, * * * based on any such alleged injury or damage, and to pay all damages, costs and expenses, including attorney's fees, in connection therewith or resulting therefrom. ' " 4 Ariz.App. at 477, 421 P.2d at 910.

The language of the *Fluor* contract focuses the mind of the reader immediately upon " * * * claims, demands, causes of action or suits * * * " against the indemnitee, which in turn brings up the connotation that the indemnitee may be interested in being protected against liability for its own negligence. The *Fluor* contract is for a comparatively narrow time span and between parties with apparently unfettered bargaining powers.

In dissenting, I can almost rest my case upon the following statement of law from the majority opinion:

"Although agreements to idemnify for the indemnitee's negligence are not favorites of the law, Union Pac. Railroad Co. v. El Paso Natural Gas Co., 17 Utah 2d 255, 408 P.2d 910 (1965), they are generally enforceable when the parties have

1.  Reversal of the judgment as to the third-party complaint is likewise required since reversal of the judgment as to Gila River

causes it to fall. 5B C.J.S. Appeal & Error § 1951; 5 Am.Jur.2d Appeal & Error 956.

*equality of bargaining power and their intent as to such indemnification is manifestly plain and unequivocal.* Colorado Milling & Elev. Co. v. Chicago R. I. & P. R. Co., 382 F.2d 834 (10th Cir. 1967); Jordan v. Eastern Transit & Storage Co., 266 N.C. 156, 146 S.E.2d 43 (1966); Hall v. Sinclair Refining Co., 242 N.C. 707, 89 S.E.2d 396 (1955); *See* also Annot., 175 A.L.R. 8, §§ 6–10." (Emphasis mine.)

If there ever was a contract that was not made with "equality of bargaining power," this is it. An inter-state railroad, such as the plaintiff, sits high on a throne of economic and legal power when a small landowner petitions it for a private road crossing. In order to encourage the development of this country, railroads were granted by governmental subsidy[1] rights-of-way which cut a swath across this state and many others. While this grant was undoubtedly in the best interests of the country, for those owning property in the immediate vicinity of the railroad, particularly when their holdings were divided by this right-of-way, there was created a situation of economic subservience. Many cattle ranches, as well as farms, are economically hamstrung unless they can be operated as a unit. If the railroad may, as the majority opinion states, " * * * impose such conditions it chooses in granting permission" for a private road crossing, then it is indeed in almost a dictatorial position as far as these private interests are concerned.

The majority opinion suggests that there are two possible ways to construe this contract—by following the view of the *Fluor* decision or applying the alternative "express negligence" doctrine.

I do not believe we have a choice between two opposing doctrines in construing this contract. We must determine, from the words used in this integrated contract, in the light of the circumstances giving rise to the contract, the intent of the parties. Rental Development Corp. v. Rubenstein Const. Co., 96 Ariz. 133, 393 P.2d 144 (1964); and *see* Arizona Land Title & Trust Co., v. Safeway Stores, Inc., 6 Ariz. App. 52, 57, 429 P.2d 686, 691 (1967).

This is a contract intended to last for an indefinite period into the future. In this particular case, the indemnity agreement was given some thirty years prior to this accident. The possibilities of damage at this crossing arising out of the railroad's negligence are enormous. One can visualize whole trains derailed, with tens or even hundreds of persons killed and maimed.

The majority opinion takes the view that this indemnity agreement extends to damage caused by the railroad's own negligence indefinitely into the future, regardless of changes in the character of the crossing, and regardless of the amount of liability that might be caused through the negligence of the licensee. A court should not reach the conclusion that such onerous burdens were intended if there is a less stringent construction equally available. Paine v. Copper Belle Mining Co., 13 Ariz. 406, 413, 114 P. 964, 967 (1911).

In the interpretation of the majority opinion, the language in the contract "Licensee expressly waives any and all claims arising from death or injury to Licensee" becomes meaningless, for, if the preceding language already indemnifies against the negligence of the Southern Pacific Company, then there is no cause of action to waive. In case of ambiguity, the construction should be placed upon statutory language which gives some meaning to all language of the contract. Kintner v. Wolfe, 102 Ariz. 164, 426 P.2d 798 (1967).

[1]. See Great Northern Ry. Co. v. United States, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836 (1942), and State of Wyoming v. Udall, 379 F.2d 635 (10th Cir. 1967), discussing the legislative history of the "General Railroad Right of Way Act," 43 U.S.C.A. § 934 et seq., and previous legislation. *See also* Cleveland and Powell, Railroad Promotion and Capitalization in the United States (Longmans, Green & Co., 1909), esp. pp. 242–256, and Clark, Then Came the Railroads: The Century from Steam to Diesel in the Southwest (University of Oklahoma Press, 1958), esp. pp. 73–83.

Another secondary rule of construction leads us in the same direction. This is a contract prepared by the railroad, and, if other rules of construction fail to give a clear answer, remaining ambiguities should be resolved against the drafter of the instrument. Hamberlin v. Townsend, 76 Ariz. 191, 261 P.2d 1003 (1953). An application of these standard rules of construction leads me to believe that it is less than clear that this contract was intended to indemnify Southern Pacific Company against its own negligence. Because of the public policy which holds this type of contract in disfavor, this is enough to defeat the contention of the plaintiff here.

I believe this court should follow the opinion of Southern Pac. Co. v. Layman, 173 Or. 275, 145 P.2d 295 (1944), which interprets the identical language, and, as I believe, in substantially the same situation as this, to exclude indemnity for damage caused by the negligence of the indemnitee. I have no quarrel with the opinion cited by the majority, Southern Pacific Co. v. Morrison-Knudsen Co., 216 Or. 398, 338 P.2d 665 (1959). This later Oregon opinion takes pains, 338 P.2d at 671–673, to distinguish, not repudiate *Layman*, and to me the two cases are consistent and make a valid distinction between a simple crossing easement, such as in the case at bar, and a spur track agreement, in which substantial obligations are being undertaken by the indemnitee, and greater privileges given the indemnitor.

The appellant's reliance upon Atchison, T. & S. F. Ry. Co. v. James Stewart Co., 246 Cal.App.2d 821, 55 Cal.Rptr. 316 (1966), is not well taken. In that case, the licensee had agreed to provide the flagman for the particular crossing, and the failure to provide a flagman was a proximate cause of the accident. That decision would be pertinent to our case only if, in the California case, the railroad had been providing the flagman at the time of the accident, and negligence of the flagman caused the accident. There is a provision in this contract that the licensee will maintain this crossing. However, this is not a suit for breach of that agreement. Conceivably, the Southern Pacific Company may be able to recover under this agreement for the cost of maintenance which it has supplied, if the maintenance agreement was breached by the licensee. But there has been no showing of this. For all that this record discloses, the railroad has completely waived its right to insist that the licensee maintain this crossing.

This judgment should be affirmed.