**2021 UT 24**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

dōTERRA INTERNATIONAL, LLC,
*Petitioner,*

*v.*

JESSICA KRUGER,
*Respondent.*

No. 20191040
Heard March 10, 2021
Filed July 1, 2021

On Interlocutory Appeal

Fourth District, Utah County
The Honorable Thomas Low
No. 160401667

Attorneys[1]:
Steven C. Smith, Irvine, CA, Aaron R. Harris, Lehi,
Daniel S. Wittenberg, Katherine R. Nichols, Salt Lake City,
for petitioners

Blake W. Johnson, Orem, for respondent

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS and JUSTICE PETERSEN joined.

JUSTICE HIMONAS authored a concurring opinion, in which
JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

---

[1] Amicus curiae briefs were submitted by John A. Anderson, Lauren E.H. DiFrancesco, Salt Lake City, on behalf of the International Association of Defense Counsel, and Alyson C. McAllister, Paul M. Simmons, Salt Lake City, on behalf of the Utah Association for Justice.

## INTRODUCTION

¶1 Jessica Kruger, a dōTERRA International, LLC (dōTERRA) distributor or Wellness Advocate, purchased a dōTERRA product and applied it to her skin before visiting a tanning salon. Shortly thereafter, Kruger was diagnosed with second and third-degree chemical burns.

¶2 Kruger brought legal action against dōTERRA, seeking, among other things, punitive damages based on dōTERRA's failure to warn about the potential dangers of its product. dōTERRA moved for partial summary judgment arguing that Kruger waived the right to seek punitive damages in the paperwork she signed to become a dōTERRA distributor. The district court denied that motion and ruled that Utah law does not allow preinjury waivers of punitive damages. In the course of reaching that decision, the district court referred to dōTERRA's agreement with Kruger as a contract of adhesion.

¶3 dōTERRA sought an interlocutory appeal. We affirm the district court's denial of the partial motion for summary judgment, but we employ a different rationale than the district court did. To the extent that the district court's reference to dōTERRA's contract as one of adhesion constitutes a ruling on that issue, we vacate it.

## BACKGROUND

¶4 Kruger wanted to become a dōTERRA Wellness Advocate, which is the term that dōTERRA uses for its independent distributors.[2] dōTERRA required her to sign a Wellness Advocate Agreement (Agreement). Once a Wellness Advocate, Kruger purchased ClaryCalm, a dōTERRA product intended to address "normal symptoms associated with PMS and the transition through menopause." The labeling did not mention that the product contained a high concentration of an ingredient that causes sensitivity to the sun. In fact, the label said: "Does not cause sun sensitivity."

---

[2] This case comes before us as an interlocutory appeal of the district court's decision to deny dōTERRA's motion for partial summary judgment. In this procedural posture, we consider the alleged facts in the light most favorable to the non-moving party, Kruger. *Massey v. Griffiths*, 2007 UT 10, ¶ 8, 152 P.3d 312.

¶5    Kruger went tanning several hours after she had applied ClaryCalm to her abdomen and back. That evening, she noticed a sunburn where she had used ClaryCalm. The sunburn worsened the next day, and it became even more severe the day after that. Kruger sought treatment at an urgent care facility. The urgent care provider, observing the burn's severity, sent her to the hospital. The hospital diagnosed her with second and third-degree chemical burns.

¶6    Subsequent testing revealed that ClaryCalm contained a compound called bergapten. Bergapten can cause increased sensitivity to the sun at 15 ppm. ClaryCalm contained the ingredient at a concentration of 347 ppm.

¶7    dōTERRA warned consumers when its other products caused sun sensitivity, but, by its own admission, erroneously left this warning off of the ClaryCalm label. Prior to Kruger's injury, other customers had complained to dōTERRA about burns after using ClaryCalm. Some of those customers requested that dōTERRA place a warning on ClaryCalm about the risk of burns. dōTERRA eventually reformulated the product to remove the phototoxic compound that Kruger claims caused her burns.

¶8    Kruger filed a complaint against dōTERRA seeking recovery for her injuries. She also sought punitive damages "to deter future similar conduct." dōTERRA moved for partial summary judgment.

¶9    dōTERRA argued that Kruger was contractually restricted from seeking punitive damages because, as a dōTERRA Wellness Advocate, she had waived her ability to claim punitive damages. dōTERRA based its motion on the Agreement. That document states that

> dōTERRA . . . shall not be liable for special, indirect, incidental, consequential, punitive, or exemplary damages. If dōTERRA is found to be in breach of the [Agreement], the maximum amount of damages I may claim shall be limited to the amount of unsold inventory that I personally purchased from the company and have remaining on hand. I release and agree to indemnify dōTERRA and its affiliates from any and all liability, damages, fines, penalties, or other awards or settlements arising from, or relating to my actions in the promotion or operation of my dōTERRA independent business and any activities related to it
> . . . .

¶10 The Agreement incorporated the dōTERRA Policy Manual by reference. The Policy Manual provides that dōTERRA

> shall not be liable for any: . . . special, indirect, incidental, punitive, or consequential damages, including loss of profits, arising from or related to the operation or use of the products including, without limitation, damages arising from loss of revenue or profits, failure to realize savings or other benefits, damage to equipment, and claims against the [Wellness Advocate] by any third person . . . .

dōTERRA argued in its motion for partial summary judgment that the two provisions demonstrated that Kruger had waived any right she may have had to claim punitive damages from her injuries.

¶11 The district court denied dōTERRA's motion. The district court acknowledged that the Agreement and Policy Manual expressly reference a waiver of punitive damages. But the district court concluded that Utah law prohibits a party from enforcing a preinjury waiver of liability for its own egregious conduct.[3]

¶12 Specifically, the district court found that *Russ v. Woodside Homes, Inc.*, 905 P.2d 901 (Utah Ct. App. 1995), stands in the way of preinjury waivers of punitive damages. The *Russ* court reasoned that, "Generally, parties 'not engaged in public service may properly bargain against liability for harm caused by their ordinary negligence in performance of contractual duty; but such an exemption is always invalid if it applies to harm wil[l]fully inflicted or caused by gross or wanton negligence.'" *Id.* at 904 (citation omitted).

¶13 dōTERRA interpreted *Russ* differently. dōTERRA agreed that *Russ* precludes a party from enforcing a preinjury waiver of *liability*. But dōTERRA argued that its contract contained a preinjury waiver of a *remedy*; a provision it contended the *Russ* court did not explicitly address.

¶14 The district court rejected this distinction, finding, "Punitive damages are a form of liability." The district court noted that, in

---

[3] Kruger also argued that she had not waived her right to seek punitive damages because dōTERRA's waiver was not "clear and unequivocal," as Utah law requires. The district court did not address that argument.

*Russ*, the court of appeals held that bargaining to avoid liability for "harm wil[l]fully inflicted or caused by gross or wanton negligence" is "always invalid." *Id.* (citation omitted). The district court reasoned that a plaintiff must establish "willful and malicious . . . conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others" to receive punitive damages under Utah Code section 78B-8-201(1)(a). The court further reasoned that since the standard for proving punitive damages is set quite high—"willful and malicious conduct"—it would be "a remarkable thing" for punitive damages to fall below the bar *Russ* set for conduct that cannot be waived: "harm wil[l]fully inflicted or caused by gross or wanton negligence." *Russ*, 905 P.2d at 904. And the district court concluded that Utah law did not permit Kruger to waive her right to sue dōTERRA for punitive damages.

¶15 At one point in its order, the district court stated that "[dōTERRA]'s policy manual is a contract of adhesion." The district court characterized the Agreement this way in the course of distinguishing a case dōTERRA cited suggesting that "punitive damages can be appropriately bargained away."

¶16 dōTERRA sought interlocutory review of the district court's order denying dōTERRA's motion for partial summary judgment. dōTERRA challenges the district court's conclusion that Utah law precludes preinjury waivers of punitive damages and its finding that dōTERRA's Agreement was a contract of adhesion.

## STANDARD OF REVIEW

¶17 "We review a [district court's] summary judgment determination 'for correctness, granting no deference to the [district] court's legal conclusions.'" *Wayment v. Clear Channel Broad., Inc.*, 2005 UT 25, ¶ 15, 116 P.3d 271 (second alteration in original) (citation omitted).

## ANALYSIS

### I. KRUGER'S WAIVER OF PUNITIVE DAMAGES WAS NOT CLEAR AND UNEQUIVOCAL

¶18 dōTERRA asks us to address whether Utah law permits a party to waive punitive damages and to conclude that it does. In dōTERRA's view, Utah law should respect freedom of contract and allow a party to preemptively bargain away her right to seek

punitive damages.[4] However, this court can affirm where there exists another ground to sustain the decision that is apparent from the record. *See Bailey v. Bayles*, 2002 UT 58, ¶ 13, 52 P.3d 1158. And here, there is another ground apparent on the record that this court is better positioned to address.

¶19 Kruger argued to the district court that even if Utah law permitted a preinjury waiver of punitive damages, that waiver would have to be "clear and unequivocal." Kruger contended that the Agreement she signed with dōTERRA lacked such clarity. The district court did not reach this argument because it ruled that Utah law did not allow a person to waive punitive damages. Kruger renews this argument on appeal, and we affirm on this basis.

¶20 We have not addressed whether a party can waive a claim for punitive damages prior to injury. Nor have we opined on what, assuming a party can enter into such an agreement, that waiver must look like. But this court has held that, for one party to "indemnify [another] . . . against the latter's negligent acts," the parties must "make that intent clear and unmistakable." *Union Pac. R.R. Co. v. El Paso Nat. Gas Co.*, 408 P.2d 910, 914 (Utah 1965). In *Union Pacific Railroad Co.*, the parties presented us with a contract that provided that El Paso Natural Gas would indemnify Union Pacific

> from and against *any and all liability*, loss, damage, claims, . . . *of whatsoever nature* . . . growing out of injury or harm to or death of persons whomsoever, or loss or destruction of or damage to property whatsoever, including the pipe line, when such injury, harm, death, loss, destruction or damage, *howsoever caused*, grows out of or arises from the bursting of or leaks in the pipe line, or *in any other way whatsoever is due to or arises because of the existence of the pipe line* or the construction, operation, maintenance, repair, renewal, reconstruction

---

[4] To demonstrate that a freely negotiated agreement violates public policy, a party must be able to articulate a "'well-defined and dominant' policy" sufficient to create a showing "free from doubt." *Eagle Mountain City v. Parsons Kinghorn & Harris, P.C.*, 2017 UT 31, ¶ 15, 408 P.3d 322 (citations omitted). Without comment on the parties' arguments that existing statutory references to punitive damages either are or are not a clear enough expression of policy to sustain the burden *Eagle Mountain* describes, we invite the legislature to consider specifically addressing the question.

> or use of the pipe line or any part thereof, or to the
> contents therein or therefrom.

*Id.* at 912 (alterations in original). Union Pacific argued that this required El Paso Gas to indemnify for losses arising out of Union Pacific's negligence. *Id.* We noted that "the law does not look with favor upon one exacting a covenant to relieve himself of the basic duty which the law imposes on everyone: that of using due care for the safety of himself and others." *Id.* at 913. This led us to conclude that "the presumption is against any such intention, and it is not achieved by inference or implication from general language." *Id.* at 914. We reasoned that, if the parties had intended that El Paso Gas indemnify Union Pacific for the railroad's negligent acts, "it would have been easy enough to use that very language and to thus make that intent clear and unmistakable." *Id.*

¶21 We applied this standard in *Pearce v. Utah Athletic Found.*, 2008 UT 13, ¶¶ 5 n.1, 22–23, 179 P.3d 760, *abrogated on other grounds by Penunuri v. Sundance Partners Ltd.*, 2017 UT 54, 423 P.3d 1150. There, we held that a waiver was "clear and unequivocal" where it disclaimed "ANY AND ALL LIABILITY, CLAIMS, DEMANDS, AND CAUSES OF ACTION WHATSOEVER ARISING OUT OF OR RELATED TO ANY LOSS, DAMAGE, OR INJURY, INCLUDING DEATH." *Id.* ¶¶ 23, 5 n.1. We noted that this waiver "conceivably could have been written more concisely or plainly, but that does not render it unclear or ambiguous." *Id.* ¶ 23. Crucially, "[t]he sentence, in clear and unequivocal language, releases [the defendant] from any claim 'whether caused by the negligence of [the defendant] or otherwise.'" *Id.* Therefore, the waiver was enforceable.

¶22 We see no reason why a preinjury waiver of punitive damages—assuming that Utah law permits such a creature—should require anything less than the "clear and unequivocal" language required for waivers of liability. Here, as in *Union Pacific Railroad Co.*, we note that "the law does not look with favor upon one exacting a covenant to relieve himself [or herself] of the basic duty which the law imposes on everyone: that of using due care for the safety of himself [or herself] and others." *See* 408 P.2d at 913. Therefore, if such a waiver is to be given effect, it is "easy enough to use that very language and to thus make that intent clear and unmistakable." *Id.* at 914.

¶23 dōTERRA argues that *Union Pacific Railroad Co.* ought not apply to this case. dōTERRA notes that it is not trying "to exempt itself from all tort liability for the injuries its products allegedly caused." Rather, "dōTERRA is seeking to enforce a much narrower

waiver that only precludes Kruger from recovering one particular type of damages—punitive damages." dōTERRA notes that this court has previously held that "punitive damages are not intended as additional compensation to a plaintiff." *Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179, 1186 (Utah 1983). Therefore, dōTERRA argues, "this case is readily distinguishable from" cases involving complete waivers of liability that preclude a plaintiff's ability to recover anything for her injuries. But in *Union Pacific Railroad Co.*, we did not speak narrowly of just "compensation to a plaintiff," like we did in *Behrens. Compare Behrens*, 675 P.2d at 1186, *with Union Pac. R.R. Co.*, 408 P.2d at 913. Instead, we spoke broadly in *Union Pacific Railroad Co.* about waiver of the responsibility of "using due care for the safety himself [or herself] and others." 408 P.2d at 913.

¶24 So, even though—as dōTERRA correctly observes—our cases have "addressed broader attempts by parties to totally exempt themselves from tort liability, rather than waivers of a single, non-compensatory form of damages," we nevertheless find the logic of *Union Pacific Railroad Co.* compelling in this context. Punitive damages "serve a societal interest of punishing and deterring outrageous and malicious conduct which is not likely to be deterred by other means." *Behrens*, 675 P.2d at 1186. Punitive damages, therefore, are part of the system that the law imposes to enforce the "basic duty" of due care for the safety of others that "the law imposes on everyone." *See Union Pac. R.R. Co.*, 408 P.2d at 913. Attempts to relieve oneself from the consequences of a blatant disregard of that duty should not be looked upon with favor. To be effective, a preinjury waiver of punitive damages must be clear and unequivocal.

¶25 Before the district court, and again before us, Kruger argues that neither the Agreement nor the Policy Manual "clearly and unequivocally exempt [dōTERRA] from negligence or punitive damages from personal injury or tort liability." "When looking at the language and purpose of the entire agreement," Kruger argues, "together with the surrounding facts and circumstances, [dōTERRA] cannot point to anything that even hints at the idea that the agreement intends to limit tort liability or punitive damages stemming from physical injuries."

¶26 We agree. And we start from the presumption against an intention to waive punitive damages. We emphasize that a waiver "is not achieved by inference or implication from general language," and that we look for language that is "clear and unmistakable." *Id.* at 914.

¶27 The Agreement provides "dōTERRA . . . shall not be liable for special, indirect, incidental, consequential, punitive, or exemplary damages." But it nowhere uses the words "personal injury." Nor does it suggest that Kruger was agreeing with dōTERRA to waive her claim to punitive damages arising out of her use of dōTERRA's products. Rather, it states that Kruger will release and indemnify dōTERRA from "any and all liability, damages, fines, penalties, or other awards or settlements" that arise from or relate to Kruger's "actions in the promotion or operation of [her] dōTERRA independent business and any activities related to it." In context, the language suggests that this provision contemplates a business deal gone bad. For example, the Agreement notified Kruger that if dōTERRA "is found to be in breach of the [Agreement], the maximum amount of damages" she could claim would be "limited to the amount of unsold inventory" she purchased from the company and had "remaining on hand."

¶28 In other words, the broad waiver the Agreement contains might cover personal injury claims—after all, it uses language like "any and all liability" and covers "any activities related to" the operation of Kruger's distributorship—but it does not do so clearly and unambiguously. As we said in *Union Pacific Railroad Co.*, if dōTERRA had intended that Kruger waive punitive damages occasioned by her use of ClaryCalm, "it would have been easy enough to use that very language and to thus make that intent clear and unmistakable." *Id.*

¶29 The Policy Manual fares no better. The waiver in that document, which was incorporated by reference into the Agreement, says that dōTERRA "shall not be liable for any: . . . punitive, or consequential damages . . . arising from or related to the operation or use of the products . . . ." And while that is more explicit than the language in the Agreement, the Policy Manual gives some examples of the types of damages Kruger agrees to not seek from dōTERRA. The Policy Manual states that the damages Kruger waived include, "without limitation, damages arising from loss of revenue or profits, failure to realize savings or other benefits, damage to equipment, and claims against the [Wellness Advocate] by any third person . . . ." Notwithstanding the Manual's language that these examples are included "without limitation," these examples nevertheless give context to and rein in the liability waiver that could otherwise be read more broadly.

¶30 dōTERRA might have a persuasive argument that this language could be read to include a waiver of punitive damages

arising out of the "operation or use" of its products. But dōTERRA does not explain how, in light of the examples that follow, the Policy Manual clearly and unambiguously gives notice that it effectuates a waiver of punitive damages arising out of an injury caused by using its products. Based on this contractual language, Kruger may have given a "clear and unmistakable" waiver of her right to seek punitive damages for potential "loss of revenue or profits" or "failure to realize savings," but Kruger did not give a "clear and unmistakable" waiver of her right to seek punitive damages for her personal injuries.

¶31 And, indeed, dōTERRA's waiver does not resemble those we have found to be clear and unmistakable. For example, in *Pearce*, the waiver shouted that it applied to "ANY AND ALL LIABILITY, CLAIMS, DEMANDS, AND CAUSES OF ACTION WHATSOEVER ARISING OUT OF OR RELATED TO ANY LOSS, DAMAGE, OR INJURY, INCLUDING DEATH." 2008 UT 13, ¶ 5 n.1. Compared to this clear expression of what it hopes to accomplish, dōTERRA's waiver is found lacking.

¶32 Simply stated, dōTERRA cannot overcome the presumption against a preinjury waiver. *See Union Pac. R.R. Co.*, 408 P.2d at 914. By signing up to be a distributor of dōTERRA's products, Kruger did not give an "unmistakable" waiver of her right to sue dōTERRA for personal injuries caused by its products. *See id.* Nor did Kruger expressly disclaim her right to seek punitive damages for "injury" or other forms of "bodily harm" to her own person, as plaintiffs have in other cases. *See, e.g., Pearce*, 2008 UT 13, ¶¶ 5 n.1, 22–23. We therefore affirm the district court's decision to deny partial summary judgment on Kruger's ability to recover punitive damages.

## II. TO THE EXTENT THE DISTRICT COURT RULED THAT THE CONTRACT WAS ONE OF ADHESION, WE VACATE THAT RULING

¶33 dōTERRA asks us to address another portion of the district court's ruling. In the course of reaching its main finding, the district court distinguished a case that dōTERRA had cited: *Hayes v. Oakridge Home*, 908 N.E.2d 408 (Ohio 2009). To distinguish *Hayes,* the district court noted that "unlike the voluntary agreement in *Hayes*, [dōTERRA's] policy manual is a contract of adhesion." dōTERRA asks us to overrule that conclusion.

¶34 As an initial matter, we are not convinced that the district court intended to conclude that the contract was one of adhesion. Utah law characterizes a contract of adhesion as one that "is

prepared in a standardized form and presented on a take-it-or-leave-it basis to one occupying a disadvantageous bargaining position." *Sys. Concepts, Inc. v. Dixon*, 669 P.2d 421, 429 (Utah 1983). It does not appear that Kruger argued to the district court that the Agreement met that definition. And, certainly, the district court did not analyze whether the Agreement satisfied the legal test before characterizing it that way. As such, it appears that the description was an off-hand descriptor the district court employed to distinguish *Hayes.*

¶35 We nevertheless understand that paranoia saves lives and can sympathize with dōTERRA's desire to not have the district court's statement bouncing around the litigation. Accordingly, we vacate the district court's "conclusion" that dōTERRA and Kruger entered into a contract of adhesion. We emphasize, however, that we express no opinion on that question and nothing we say prevents Kruger from making that argument should the issue arise again in the district court.

## CONCLUSION

¶36 Kruger did not waive her right to sue dōTERRA for punitive damages arising out of a personal injury when she signed dōTERRA's Agreement. Utah law requires that such a waiver be clear and unambiguous. dōTERRA's was neither. We affirm the denial of partial summary judgment on that basis. To the extent the district court ruled that the dōTERRA contract was a contract of adhesion, we vacate that ruling without prejudice to Kruger's ability to revisit that question on remand.

_____

JUSTICE HIMONAS, concurring:

¶37 I agree fully with Justice Pearce's well-reasoned opinion. I write separately only to express my conclusion that the Agreement's supposed waiver of punitive damages is contrary to public policy and thus unenforceable.

¶38 "[F]or a contract to be void on the basis of public policy, 'there must be a showing free from doubt that the contract is against public policy.'" *Eagle Mountain City v. Parsons Kinghorn & Harris, P.C.*, 2017 UT 31, ¶ 15, 408 P.3d 322 (quoting *Ockey v. Lehmer*, 2008 UT 37, ¶ 21, 189 P.3d 51). We have set this high bar because we "indulge[] in a strong presumption of freedom of contract." *Id.* Nonetheless, I conclude that the legislature has left no doubt that contractual waiver of punitive damages is contrary to public policy in Utah.

¶39 I reach this conclusion because the legislature already expressly prohibits contractual protection against punitive damages, for public policy reasons, in one very important context. The Utah Insurance Code provides: "No insurer may insure or attempt to insure against: (1) a wager or gaming risk; (2) loss of an election; (3) the penal consequences of a crime; or (4) punitive damages." UTAH CODE § 31A-20-101. The first three enumerated items reflect a legislative intent that no persons can protect themselves from financial loss arising from behavior detrimental to society. The reason for the prohibition on insurance against criminal penal consequences is obvious—we don't want to incentivize crime by allowing individuals to insure against losses caused by prison time. Similarly, insurance against a (presumably otherwise legal) wager or gaming risk is functionally no different than gambling—conduct categorically criminalized in Utah. *Id.* § 76-10-1102(1). And allowing a person to insure against an election loss could allow strong and personal financial incentives to infect candidates' motivation to seek office and thus pervert our democratic process.

¶40 Which leaves the fourth area expressly precluded from insurance coverage: punitive damages. To explain why it is included in the statutory prohibitions, we apply "the principle of *noscitur a sociis*—a word is known by the company it keeps." *Yates v. U.S.*, 574 U.S. 528, 543 (2015). While the principle is typically used to elucidate the legislature's intended meaning of a particular term in a statute, the logic behind it applies with equal force here to explain the legislature's inclusion of a particular term. So, I infer that the legislature prohibits insuring against punitive damages for the same reasons it prohibits insuring against gaming, the outcome of elections, and penal consequences—to prevent individuals from financially safeguarding against their own bad behavior.

¶41 Other states have adopted similar statutes for the same policy reasons. As one scholar explained,

> [Punitive damages] deter[] future misconduct by forcing the actor to contend with the possibility of considering a devastating punitive damages award. This is similar to the decision of state legislatures to prohibit insurance companies from insuring punitive damages. If a corporation could insure punitive damages, it could control its environment and thus plan around the risks of intentional misconduct.

Paul J. Zwier, *Due Process and Punitive Damages*, 1991 UTAH L. REV. 407, 426 (1991) (citing UTAH CODE § 31A-20-101).

¶42    The public policy underlying the legislature's decision to prohibit contractually insuring against punitive damages applies equally to contractual waiver of punitive damages. The fact that there exists no statute expressly prohibiting waiver of punitive damages is of no moment. After all, with a few notable exceptions (most prominently the Uniform Commercial Code, UTAH CODE §§ 70A-1a-101 to 70A-10-104), contract law is still dominated by the common law. For these reasons, I would also hold that the Agreement, to the extent it purports to indemnify dōTERRA against any claims for punitive damages, is unenforceable as contrary to public policy.

———————