420 P.2d 848

**HOWE RENTS CORPORATION, Plaintiff and Respondent,**

v.

**John WORTHEN, dba Exotic Swimming Pool Company, Defendant and Appellant.**

No. 10583.

Supreme Court of Utah.

Dec. 9, 1966.

----◇----

K. Samuel King, Salt Lake City, for appellant.

R. William Bradford, Jr., and John M. Bradley, Salt Lake City, for Howe Rents Corp.

CALLISTER, Justice.

This is an action based on a written contract of bailment for damage done to plaintiff's equipment while in the possession of the bailee, defendant. Plaintiff is in the business of renting equipment to the public. Defendant, a swimming pool contractor, rented a cement mixer from plaintiff on August 4, 1962. Without assistance from defendant, plaintiff attached the mixer to defendant's two-ton truck by means of a chain and ball hitch. Subsequently, while the defendant was towing the mixer, it came loose and overturned, causing damage to it.

The case was tried before the court, and judgment was awarded to plaintiff after the court had considered the pleadings, the contract, and the stipulation of counsel as to the facts.

The trial court ruled that the bailor was entitled to recover from the bailee for the damage to the bailed chattel under the terms of the bailment contract. This, in spite of the fact that the bailor's negligence and that it was the proximate cause of the damage had been placed in issue by defendant's answer and the pre-trial order. In other words, the negligence of the bailor, if any, would not constitute a defense to the bailor's claim for damages under the terms of the agreement. The sole issue of this case is whether the provisions of this bailment contract can be so interpreted as to render the bailee liable for damages caused by the negligent acts of the bailor; so that the bailee's allegations of the bailor's negligence do not constitute a defense in this action.

The relevant provisions of the bailment agreement read as follows:

Lessee assumes all liability for damages from accident caused by or incurred in the use or transportation of said equipment, and agrees to indemnify and hold harmless the said Lessor, its officers, agents and employees from any and all

damages and/or liability to any person whomsoever arising out of or resulting from the use, storage or transportation of said equipment by the Lessee or by anyone else while the equipment is in the custody of the Lessee. Lessee acknowledges receipt of the equipment in good working condition and repair and agrees to return it in as good condition, subject to reasonable wear and tear, and Lessee shall be liable for all damage to or loss of the equipment regardless of cause until it shall have been returned to and receipted for by the Lessor.

In Barrus v. Wilkinson,[1] this court stated:

> Where an indemnity agreement is involved it is generally held that the agreement will not be construed to cover losses to the indemnitee caused by his own negligent acts unless such intention is expressed clearly and unequivocally. Especially is this true where an affirmative act of negligence is involved.

This principle was further elaborated in Union Pacific Railroad Co. v. El Paso Natural Gas Co.:[2]

> A closely related proposition pertinent here is that the law does not look with favor upon one exacting a covenant to relieve himself of the basic duty which the law imposes on everyone: that of using due care for the safety of himself and others. This would tend to encourage carelessness and would not be salutary either for the person seeking to protect himself or for those whose safety may be hazarded by his conduct. For these reasons such covenants are sometimes declared invalid as being against public policy. However, this may depend upon the circumstances. The majority rule appears to be that in most situations, where such is the desire of the parties, and it is clearly understood and expressed, such a covenant will be upheld. But the presumption is against any such intention, and it is not achieved by inference or implication from general language such as was employed here.[3] It will be regarded as a binding contractual obligation only when that intention is clearly and unequivocally expressed.

If it had been the intent of the parties that the defendant should indemnify the plaintiff even against the latter's negligent acts, it would have been easy enough to use that very language and to thus make that intent clear and unmistakable, which was not done here.

 In the instant case, the bailor prepared the document, and, therefore, in case

1. 16 Utah 2d 204, 205, 398 P.2d 207, 208 (1965).
2. 17 Utah 2d 255, 259, 260, 408 P.2d 910, 913 (1965).
3. The defendant had agreed to indemnify the plaintiff "from and against any and all liability, loss, damage, claims, * * * of whatsoever nature, * * * howsoever caused. * * *."

of doubt or uncertainty it should be strictly construed against him. The general language "the Lessee shall be liable for all damages to or loss of the equipment regardless of cause" does not constitute a clear and unequivocal expression creating an obligation for the bailee to indemnify the bailor for the bailor's negligent acts.

This case is reversed and remanded to allow defendant to assert his defense of the bailor's alleged negligence. Costs to appellant.

CROCKETT and TUCKETT, JJ., concur.

McDONOUGH, J., heard the arguments but died before the opinion was filed.

HENRIOD, Chief Justice (dissenting):

I dissent. True, I don't like cement mixers, particularly. Sometimes I don't like certain contracts. Both can be dangerous. The former are here to stay. The latter have been with us for quite some time,—long before the cement mixer. But this might contribute to a slow attrition of the contract and head it toward a judicial skid row and an affinity for a great society that sometimes does not recognize the sanctity of contracts,—I don't know.

Somewhat out of context the main opinion liberally quotes from Union Pacific Railroad Co. v. El Paso Natural Gas Co.

Factually that case is different. It is sort of based on an "iffy" approach to the effect that if one does not get out of bed in the morning, such a horrendous, distasteful event may have a serious impact on contractual obligations. It suggests that an indemnitor is liable if, and only if, injury occurs on the pipeline easement, but not if it occurs on a trail leading to and from it, with no other access. Such suggestion was pure dictum. But taking this dictum *in context*, with its prefatory obiter to the effect that everyone should be nice and prudent in his covenants so as not to interfere with the primary object that courts immalleably must do justice, it nonetheless urges that "such covenants are *sometimes* declared invalid as being against public policy" but that "this may depend upon the circumstances." Further, that "[t]he majority rule appears to be that in most situations, where such is the desire of the parties, and it is clearly understood and expressed, such a covenant will be upheld." Better that the main opinion had left this tidbit out, since it does not square with its opiniate that "the bailor prepared the document, and, therefore, in case of *doubt or uncertainty* it should be strictly construed against him."

The main opinion's explanation is a non sequitur. The language in this contract was crystal clear. Without any semblance of syllogistic reasoning, the main opinion does not clear up any doubt, but creates one

when it says "[t]he general language (that) the Lessee shall be liable for all damage to or loss of the equipment regardless of cause" and that this "does not constitute a clear and unequivocal expression creating an obligation for the bailee to indemnify the bailor for the bailor's negligent acts." Why not? No language could be clearer. Whether it is against public policy is something else.

So: we find that the main opinion is based on inconsistency: 1) that the contract is against public policy for the reason that 2) it is not clearly expressed.

If its lack of clarity is the basis for such conclusion, the opinion is dead wrong, since no one can say the language is not clear, unless someone takes such a position in utter disregard of lexicography.

One might assert that the crystal clear language of this agreement is against public policy, but he cannot warp clarity and say that such clarity, in his sovereign opinion, is obscure, and that in spite of Hell and high water, he proclaims it thus. If the contract is uncertain for equitable reasons, that is one thing, and it is void. In that event the parties go back to where they started. The main opinion has ignored principles by an objective, desired result which mayhap may be due to antipathy toward equipment rentals, fine print, or something else about which this dissident is unaware. The reasoning of the main opinion leaves something to be desired in the seance area.

Some more loose talk in the main opinion is cause for concern. It says "The sole issue of this case is whether the provisions of this bailment contract can be so interpreted as to render the bailee liable for damages caused by the negligent acts of the bailor; so that the bailee's *allegations* of the bailor's negligence do not constitute a defense in this action."

I think this statement in the main opinion really was unintended. If it were, then the whole case falls and the main opinion is grasping at straws. The statement of the author of the main opinion, if intended, simply would eliminate proof in any case. It would preclude recovery if the defendant coyly alleged that the plaintiff was a congenital liar,—usually the case in pleadings, —*but not in the proof*. I hope this expanded philosophy will not hit the national reporter system, with a key number, else defense counsel will be let out of school and will have a field day making easy fees. I thought that allegations with respect to negligence had to be proved,—not accepted. I get from the main opinion that this is not so.

The implication in the main opinion is that the trial court ruled the bailor was entitled to recover from the bailee for the damage to the bailed chattel under the terms of the bailment contract, even assuming

that the bailor was negligent, and that such negligence might be the proximate cause of the damage. The trial court by implication or otherwise made no such assumption.

The trial court simply said that *if he decided there was no liability under the contract,* he would consider the matter of negligence. That's all. He decided there *was* liability under the contract. That's all. *No one objected to this conditional* conclusion. No one insisted that if the court found liability under the contract, there would remain a question of negligence. A belated motion for a new trial complained about it, which was too late and too little. For the first time on appeal, appellant spent a lot of time talking about absolute liability under a statute.[1] I invite anyone to find in the record where such a statute was ever urged or even suggested. This is sort of Johnny come lately stuff.

On motion for new trial a proffer of proof was made without a snitch or suggestion that the evidence proposed arose from newly discovered evidence, as is required under the rules.

Furthermore, there is a rather superficial suggestion the plaintiff *must* have been negligent for some reason or another. This red flag was not pinpointed, but was bottomed conjecturally by proffered exhibits in connection with a motion for a new trial, which was supported only by drawings of an artist,—the defendant himself. This gesture also was too late and too little. In my opinion it reflected a self-serving evasive action. It suggested a greater knowledge about the mechanics of the trailer's propensities than that of the lessor. Why the defendant did not display his artistry before the motion for a new trial is beyond me and represents nothing more than a maize-like twiddle-twaddle.

The facts in this case are that defendant, with his confident expression of expertise, saw no defects, heard no defects and expressed nothing about defects. This is monkey business. Under the pleadings and the discovery procedure in this case, the trial court was dead right in refusing to start a brand new case on motion for a new trial, theretofore NOT presented on the case in chief. One chooses his weapon. If a sword is chosen in the duel, and if the "touche" comes, he cannot then choose a pistol to clobber his adversary who is six-gun-less.

Barrus v. Wilkinson, leaned on heavily by the majority, involved a case in which a *lessee* sued a *lessor*,—the antithesis of the instant case. In my opinion, it is different from the case here, except to supply a dessert to the main opinion.

1. Section 41-6-148.40, U.C.A.1953.

Aside from the main opinion's inconsistencies, there are other reasons to sustain the trial court.

Howe leased a cement mixer to Worthen. He hooked it onto the latter's car. Worthen pulled it outside of the county in contravention of his signed agreement. The coupling broke for some reason or another, not disclosed by the pleadings or proof in this case, causing damage in the amount of $306.71.

The trial court gave judgment for this amount, based on the contract which provided that Worthen accepted the mixer as being in good condition, and that he would return it in the same condition, and would be responsible for any damage to it in the interim. He agreed also that he would not remove it from the county, which he did in violation of that provision.

Worthen says Howe can't recover because he was negligent. The evidence proves nothing of the sort. He says Howe was negligent because he did not comply with a safety statute, forgetting, however, either to plead or prove any violation of such statute until it was too late. Even so, this urgence is inconclusive, and if it be of any interest, reference is made to Klafta v. Smith, 17 Utah 2d 65, 404 P.2d 659 (1965).

I think the contract here was not void as being against public policy. If it was, the action and the response in this case were both ill-conceived, particularly in view of the fact that there is nothing in this case reflecting that Howe knowingly or wilfully set up a dangerous condition.

The omnibus clause about indemnification against any cause is inapropos under the facts of this case, and is only a straw grasped to arrive at a conclusion the main opinion happens to favor. (All emphasis added.)