SUNILAND CORPORATION, a Utah corporation, Newton A. Tuttle, Jr., and Ruth Tuttle, his wife, Plaintiffs and Respondents,

v.

Charles Ronald RADCLIFFE, Judy S. Radcliffe, his wife, and Farmer's Home Mutual Insurance Company, a Minnesota corporation, Defendants and Appellants.

No. 14967.

Supreme Court of Utah.

Feb. 22, 1978.

J. Frank Allred, Salt Lake City, for Radcliffes.

George A. Hunt, Salt Lake City, for Farmer's.

Robert McDonald, Mark O. Van Wagoner, Salt Lake City, for plaintiffs and respondents.

ELLETT, Chief Justice:

Suniland sold a home to Radcliffe who later became dissatisfied with it. The parties settled their dispute by Suniland repurchasing the home, and as part of the agreement permitted Radcliffe to rent the house for one month while looking for another abode. Suniland took out an insurance policy to cover any loss it might sustain as a result of vandalism or malicious mischief.

At the end of the rental month the Radcliffes left the home in a damaged condition; in addition, they had removed the light fixtures, the drapes, and the shutters. Suniland sued Radcliffe for the damages and also joined its own insurance carrier as a party defendant.

The court, for reasons of its own, submitted forty instructions and eleven verdicts to the jury. When the verdicts are considered together, they assess damages as follows:

Against Radcliffe

| | |
|---|---|
| (a) for removal of light fixtures, drapes, and shutters | $ 840.00 |
| (b) for breach of lease | 1,777.00 |
| (c) for attorney's fees | 2,200.00 |
| TOTAL .......... | $4,817.00 |

Against Insurance Carrier

| | |
|---|---|
| for insurance policy ............. | $1,777.00 |

The insurance company is not a party to this appeal, and the matter between it and Suniland is of no further concern to us in this case.

As best we can interpret the record, the net judgment against Radcliffe is computed as follows:

| | |
|---|---|
| Damages | $2,617.00 |
| Attorneys' fees | 2,200.00 |
| Total for Breach: ............. | $4,817.00 |
| Plus: Costs | 800.31 |
| TOTAL AWARD: ............. | $5,617.31 |

The principal thrust of Radcliffe's claim of error is that the plaintiff gets paid twice for its damage, once by Radcliffe and once by its insurance carrier. This argument is without any validity whatsoever. It is an attempt to overturn the doctrine of collateral source rule. When Suniland rented the house to Radcliffe, it paid a premium in order to get an insurance policy protecting it against loss due to vandalism, etc. The premium paid by Suniland was not paid in order to protect a tortfeasor; rather, it was paid to protect the insured. The terms of the policy were of no concern to Radcliffe. Whether or not the insurance carrier would be subrogated to the rights of the insured depends on the contract of insurance; and that would depend on the amount of premium paid.

The same principle applies where a person loses time because of tortious injury inflicted by the defendant. It may be that because of past performance on the part of the injured employee, the employer will continue to pay his salary. This is not done in order to protect the tortfeasor and is no defense to the claim for lost time. If pay-ment of wages be made out of the goodness of the employer's heart, the defendant does not get the benefit from it. The same is true when charitable agencies come to the rescue of an injured person; or in a situation where he may draw workman's compensation. In all such cases the tortfeasor is responsible for the damages he caused.

In the case of *Gatzweiler v. Milwaukee Electric Railway & Light Company*,[1] it was held that the amount received by an injured party under an accident policy for which he had paid the premiums could not be considered by way of partial or total satisfaction of damages claimed against the tortfeasor. Likewise, in the case of *Harding v. Townshed*,[2] the defendant claimed that any amounts received by the plaintiff should be deducted from any recovery obtained against him. The court there held:

. . . There is no technical ground which necessarily leads to the conclusion that the money received by the plaintiff of the accident insurance company could operate as a defense, or inure to the benefit of the defendant. The insurer and the defendant are not joint tortfeasors or joint debtors so as to make a payment or satisfaction by the former operate to the benefit of the latter. Nor is there any legal privity between the defendant and the insurer, so as to give the former a right to avail itself of a payment by the latter. The policy of insurance is collateral to the remedy against the defendant, and was procured solely by the plaintiff, and at his expense, and to the procurement of which the defendant was in no way contributory.

In the case of *Cunnien v. Superior Iron Works Company*[3] the injured plaintiff received money from the government in the amount of $120.00 per month. The trial court told the jury to deduct the sum of $120.00 per month from any award. The Supreme Court reversed and ordered the trial court to modify the judgment so as to give the plaintiff his full damages from the tortfeasor.

1. 136 Wis. 34, 116 N.W. 633 (1908).

2. 43 Vt. 536, 5 Am.R. 304 (1871).

3. 175 Wis. 172, 184 N.W. 767 (Wis.1921).

None of the cases takes issue with the principle that the receipt of insurance payments are *not* to be deducted from awards assessed against tortfeasors.[4]

■ The plaintiff's assertion that it was error to allow double recovery is made without regard to existing authority and is of no merit.[5] He also claims that since the insurer was a party to the case, the costs of trial should have been divided between appellant and the insurer. This claim is also without merit. Any additional cost made necessary by reason of joining the insurance carrier would merely be the cost of introducing the insurance policy into evidence. The evidence required to hold Radcliffe is the very same evidence that would be required in case of a separate action by plaintiff against its insurer.

There is a further reason why Radcliffe cannot assert error in regard to the costs allowed Suniland. The cost bill was filed November 23, 1976. The objection to that cost bill was filed by Radcliffe on December 16, 1976. Rule 54(d)(2), Utah Rules of Civil Procedure provides that a party who is dissatisfied with the costs claim may file a motion to have the bill of costs taxed by the court within seven days after it is filed. Here, Radcliffe waited twenty-three days before he filed any objection to the cost bill.

Other claims of error made by Radcliffe have been considered but we deem them nonprejudicial and without merit.

The judgment is affirmed. Costs are awarded to the respondent.

CROCKETT, WILKINS and HALL, JJ., concur.

MAUGHAN, Justice (dissenting):

For the following reasons, I dissent.

In my view, before there can be any discussion of the collateral source rule, the question of jury intent must be addressed. In this case, the jury was instructed the liability of the defendant insurance company extended only to damage to the premises, the result of vandalism or malicious mischief. Defendants Radcliffe, however, aside from the issue of items removed from the premises, were liable in the alternative for either their intentional damage to the premises or for breach of the lease for failure to return the rented property to plaintiff, in proper condition. This regardless of who inflicted the damage.

In his closing remarks, counsel for plaintiff Suniland assured the jury that "if you award damages against the insurance company, nobody is going to collect twice. If you award a damage against the Radcliffes under the lease and an award against the Radcliffes for intentional damage and an award against the insurance company under the policy, that does not mean they are going to recover it three times . . . . Just understand that they will only receive one recovery regardless of the basis for it."

The jury found defendant Radcliffe liable for breach of the lease in the amount of $1,777.00, but found no cause of action for intentional damage. They also returned a verdict in the same amount against defendant insurance company for damage the result of vandalism or malicious mischief. The jury was polled and discharged without objection. The court entered the $1,777.00 against both defendants individually.

Within a few days, counsel for Radcliffe procured affidavits from three of the jurors which clearly demonstrated that they, and in their opinion, the rest of the jurors, intended that Radcliffe and the insurance company be jointly liable for the $1,777.00. With the support of these affidavits, counsel for Radcliffe filed a motion to amend the judgment. Post trial motions were noticed for further hearing and on that hearing, the court struck the affidavits of the five additional jurors offered by plaintiff and denied the motion to amend the verdict.

Generally, the statements of jurors are not received to impeach their verdict as to

4. See annotations in 18 A.L.R. 683, 75 A.L.R.2d 885, 4 A.L.R.3d 535, and 7 A.L.R.3d 516.

5. The only interest which the defendant ought to have is to make sure that *he* does not have to pay twice.

what was said or done in the jury room.[1] This rule has the effect of putting an end to litigation and shields jurors from post-trial harassment from disappointed parties. However, affidavits are permissible to demonstrate what verdict was actually agreed upon. In *Moulton v. Staats*,[2] the jury, through oversight, failed to find a verdict for defendants on their counterclaim. The trial court struck the affidavits of eight jurors and denied a motion to amend the verdict. This Court reversed and stated:

> "The general rule, that the statements of jurors will not be received to establish their own misconduct, or to impeach their verdict, does not prevent the reception of their evidence as to what really was the verdict agreed on, in order to prove that, through mistake or otherwise, it has not been correctly expressed, as the agreement reached by the jury, and not the written paper filed, is the verdict; and a showing that the writing is incorrect is not an impeachment of the verdict itself . . . affidavits of jurors are admissible to show that the verdict, as received and entered of record, by reason of a mistake, does not embody the true finding of the jury. . . ." [Citations omitted.][3]

Here, too, the affidavits were filed in an effort to clarify, not to impeach the jury's verdict and should not have been stricken.

It is also the rule in Utah that a failure to object to a verdict, informal or insufficient on its face, before the jury is discharged, constitutes a waiver of that objection.[4] However, it does not appear that the jury's verdict in this case was so patently insufficient on its face that a waiver has resulted. In *Langton*, the jury failed to consider all items of damage contained in the court's instructions, awarding special damages yet excluding amounts for lost wages and pain and suffering. Amounts to which, under the evidence, plaintiff was obviously enti-

tled. In the instant case, it is not as clear that Radcliffe's counsel could readily ascertain from the face of the verdict that the jury had inadvertently held each defendant individually accountable for the $1,777.00. Apparently this was brought home to him some time after the discharge of the jury, when the court entered the judgment. Furthermore, nothing indicates that from silence would defendant obtain any strategic advantage. The relief sought is not a new trial, but only that relief which would have been available had an objection been raised before the discharge of the jury. Consequently, the case should be remanded with directions to the trial court to receive the remaining affidavits and, if they so warrant, to amend the verdict to conform to the intentions of the jury.

1. *Stringham v. Broderick*, Utah, 529 P.2d 425 (1974).

2. 83 Utah 197, 27 P.2d 455 (1933).

3. See also *Southern Pac. R. R. v. Mitchell*, 80 Ariz. 50, 292 P.2d 827 (1956); *Glennon v. Fish-er*, 51 Idaho 732, 10 P.2d 294 (1932); 18 A.L. R.3d 1132.

4. *Langton v. International Transport, Inc.*, 26 Utah 2d 452, 491 P.2d 1211 (1971).