Robert C. DuBOIS and Jeannie L. DuBois, Plaintiffs and Appellants,

v.

Thomas L. NYE and Novella Nye, Defendants, Respondents and Cross Appellants.

No. 15075.

Supreme Court of Utah.

Aug. 17, 1978.

John M. Chipman of Hanson, Wadsworth & Russon, Salt Lake City, for plaintiffs and appellants.

Leland S. McCullough, Jr., of Johnson, Durham, Moxley & McCullough, Salt Lake City, for defendants, respondents and cross appellants.

ELLETT, Chief Justice:

Plaintiffs are the sellers and defendants are the buyers of a house located in Salt Lake County, negotiated under a standard Earnest Money Receipt and Offer to Purchase agreement. On June 5, 1975, after plaintiffs had moved from the premises and during the time when defendants were, with permission of plaintiffs, moving certain items into the house, a fire broke out in the kitchen area resulting in damage in excess of $9,000. Plaintiffs' insurer paid for repairs and thereafter brought action in plaintiffs' name in the District Court of Salt Lake County, sitting with a jury, to recover the amounts expended, alleging negligence on the part of the defendants. The parties stipulated that the amount of plaintiffs' damage was $9,107.81 plus interest at 6% from June 5, 1975, to date of judgment.

Defendants counterclaimed to enforce the following covenant under the written agreement:

. . . All risk of loss and destruction of property, and expenses of insurance shall be borne by the seller until date of possession at which time property taxes, rents, insurance, interest and other expenses of the property shall be prorated as of date of possession.

Defendants alleged that plaintiffs breached this covenant by bringing this action, and they prayed for recovery of their costs in defending the action as their damages. They also prayed for reasonable attorney's fees under another provision of the agreement which provides:

We do hereby agree to carry out and fulfill the terms and conditions specified above, . . . If either party fails so to do, he agrees to pay all expenses of enforcing this agreement, or of any right arising out of the breach thereof, including a reasonable attorney's fee.

The agreement sets the date of possession by the defendants as June 1, 1975, but evidence adduced at trial showed that the parties had extended the time by oral agreement to June 6, 1975 (the day after the fire), on which day the closing occurred and title to the real property was conveyed to defendants.

Interrogatories as to issues of fact were submitted to the jury on a special verdict. In its answers to the interrogatories, the jury found that defendant, Novella Nye, was negligent; that her negligence was the proximate cause of the damage; and that the date of possession was June 6, 1975.

The court ruled as a matter of law that defendants were, under the agreement, not liable for the fire damage although their negligence was the proximate cause thereof, before the date of possession, and entered judgment in favor of defendants. The court also found that plaintiffs were in breach of their covenant to bear the risk of loss and granted judgment to defendants on their counterclaim, awarding them attorney's fees in the amount of $2,000, together with costs. Plaintiffs now appeal.

A contract made by parties should be construed so as to give effect to what the parties intended at the time it was

made. In this case the parties agreed that prior to possession of the house by the defendants the risk of loss would be upon the sellers; and after possession it would be upon the buyers. The clear intent was that loss would fall upon the one in possession of the building. They could not have intended to absolve each other for losses caused by negligence or by willful destruction. Nor does it matter that an insurance policy was, or was not, in force and effect that covered loss by fire.

The obvious intent of the contract, as shown by the covenant, is that the party in possession of the property should bear the responsibility for it. The contract did not require the plaintiffs to provide insurance coverage, only that they bear the "expenses of insurance" until the defendants took possession. The jury found that the defendants did not take possession until the day after the fire since the plaintiffs expressly refused to deliver possession until the day of closing. This finding, however, does not help defendants avoid liability for the loss since the jury also found that it was caused by the *negligence* of the defendants. Negligent losses are not the kinds of losses contemplated under the "risk of loss" language in the agreement.

■ In making the covenant contained in the agreement it should be assumed that the parties anticipated and intended losses of the character usually and reasonably to be foreseen; and more importantly, that the parties are not ordinarily required to reasonably foresee that one will be negligent and injure the other.

In this case the plaintiff did have insurance coverage, and it is the insurance company which is bringing this action in the name of the seller, seeking to recover from the tortfeasor the amount it paid under its policy for the loss. Therefore, if recovery is had by the plaintiffs, they will be subrogated to the insurance company who bore the loss; and the liability for the damages caused will be upon the defendants whose negligence caused the loss.

■ The defendants cannot avoid liability on the ground that the damage had been paid for by the insurance company. The collateral source rule provides that a wrongdoer is not entitled to have damages, for which he is liable, reduced by proof that the plaintiff has received or will receive compensation or indemnity for the loss from an independent collateral source.[1]

This Court has held that public policy opposes the contracting away of liability for future negligent acts, absent a showing of a clear intention to do so. In the case of *Union Pacific R.R. Co. v. El Paso*[2] the defendant, in order to get a right of way along the plaintiff's tracks, agreed to indemnify and hold the Union Pacific harmless:

> * * * from and against any and all liability, loss, damage, claims, * * * of whatsoever nature, * * * growing out of injury or harm to or death of persons whomsoever, . . . when such . . . death, . . . howsoever caused, . . . arises . . . because of the existence of the pipe line or the construction, operation, maintenance, repair, renewal, . . . thereof, . . . .

One John Stacey, Jr., an employee of El Paso, drove a truck across plaintiff's tracks at a crossing in order to do some maintenance work on the pipeline. He was struck by plaintiff's train and severely injured. He sued Union Pacific, which company demanded that El Paso defend pursuant to its contract. El Paso refused and the railroad settled with Stacey and then sued El Paso to recover to sum paid to Stacey. The trial court granted summary judgment to El Paso and in affirming the ruling this Court said:

> A closely related proposition pertinent here is that the law does not look with favor upon one exacting a covenant to

---

1.  25 C.J.S. Damages § 99 and the many cases therein cited; also see *Suniland Corp. v. Radcliffe, et al.,* Utah, 576 P.2d 847 (1978); *Bonneville v. Sloane,* Utah, 572 P.2d 402 (1977).

2.  17 Utah 2d 255, 408 P.2d 910 (1965).

relieve himself of the basic duty which the law imposes on everyone: that of using due care for the safety of himself and others. This would tend to encourage carelessness and would not be salutary either for the person seeking to protect himself or for those whose safety may be hazarded by his conduct. For these reasons such covenants are sometimes declared invalid as being against public policy. However, this may depend upon the circumstances. The majority rule appears to be that in most situations, where such is the desire of the parties, and it is clearly understood and expressed, such a covenant will be upheld. But the presumption is against any such intention, and it is not achieved by inference or implication from general language such as was employed here. It will be regarded as a binding contractual obligation only when that intention is clearly and unequivocally expressed.[3]

Another case is that of *Howe Rents Corp. v. Worthen*.[4] There Mr. Worthen rented a cement mixer and agreed in writing to pay for all damage to the mixer while it was in his possession, regardless of the cause. The plaintiff attached the mixer to Mr. Worthen's automobile so it could be towed to the place where it was to be used. Due to negligence in the way the mixer was attached to the automobile, it came loose and was damaged. At trial the judge ruled for the plaintiff. However, on appeal the Supreme Court reversed, saying:

. . . The general language 'the Lessee shall be liable for all damages to or loss of the equipment regardless of cause' does not constitute a clear and unequivocal expression creating an obligation for the bailee to indemnify the bailor for the bailor's negligent acts.[5]

In the case of *Barrus v. Wilkinson*,[6] Wilkinson owned an office building in which plaintiff's employer was a tenant. The employer of plaintiff had agreed to "save and hold Lessor harmless from all loss, . . . resulting from any injury to any person . . . about the leased premises . .".

When Barrus sued Wilkinson alleging negligence on the part of the defendant, Wilkinson filed a third-party complaint against the lessee seeking reimbursement. The third-party complaint was dismissed.at a pre-trial hearing, and on appeal the Supreme Court affirmed, saying:

. . . Where an indemnity agreement is involved it is generally held that the agreement will not be construed to cover losses to the indemnitee caused by his own negligent acts unless such intention is expressed clearly and unequivocally. Especially is this true where an affirmative act of negligence is involved.[7]

Our latest case on the matter is *Union Pacific R.R. Co. v. Intermountain Farmers*.[8] There, the defendant, as lessee, had promised to protect the lessor (railroad) "from all injury, damage or loss . . . from any cause whatsoever growing out of said Lessee's use thereof." [9]

There, an employee of the railroad company sued under the Federal Employer's Liability Act and recovered judgment for damages caused when the car upon which he was riding was fouled by a spool of wire near the track. The railroad sued on the indemnity agreement and recovered judgment in the trial court. This Court reversed and cited prior decisions of this Court since 1936 to the effect that absent a clear statement in an agreement that one will be excused from his own negligence, no such immunity from negligence will be effective.

■ The contract in the instant matter does not indicate an intention by the parties to excuse each other for negligence. The

3. Id. at 259, 408 P.2d at 913.

4. 18 Utah 2d 263, 420 P.2d 848 (1966).

5. Id. at 266, 420 P.2d at 849.

6. 16 Utah 2d 204, 398 P.2d 207 (1965).

7. Id. at 206, 398 P.2d at 208.

8. Utah, 568 P.2d 724 (1977).

9. Id. at 725.

broad language as to the "risk of loss" cannot be construed as a clear, unequivocal expression that is intended to include loss due to the negligent or intentional wrongful conduct of either party. We will not torture the language to find a construction that will justify immunity where none was intended.

The jury made specific findings that defendant, Novella Nye, was negligent and that her negligence was the proximate cause of the fire. This should have resulted in a verdict for plaintiffs. Therefore, the trial court erred when it held, as a matter of law, that defendants had an absolute defense under the contract and could not be held liable for any damage to the premises that was caused by their own negligence.

■ The defendants claim there was no evidence to justify a finding that their negligence was a proximate cause of the fire that caused the destruction of the building. The facts that were stipulated to by the parties show that Mrs. Nye had placed some cardboard boxes on a defective electric range which was known to be defective; that she had possession of the keys to the house; that plaintiffs were out of the state; that Mrs. Nye took some articles from the cardboard box and stepped outside into the garden. Shortly thereafter she saw smoke and fire coming from the kitchen. We think there can be no question raised about the cause of the fire: it was the negligence of Mrs. Nye in putting the cardboard box on a defective range. Nobody else was in or about the house. The claim made here has no basis and is rejected.

Since we are holding that the judgment was in error, it was not necessary to address the issue of attorney's fees that were awarded to defendants.

The judgment is reversed with instructions to enter judgment for plaintiffs in the amount stipulated to by the parties. Costs are awarded to appellants.

CROCKETT and HALL, JJ., concur.

WILKINS, Justice (dissenting):

The majority of the Court observes that public policy frowns upon allowing a party to indemnify himself against his own negligence. That is an old and honored rule of law, and is based upon sound reasoning.[1] But this Court has applied that rule today with, I believe, too much rigor.

The distinction between this case and those cited in the majority opinion is that, here, the parties agreed to provide insurance, and to prorate the costs of that insurance between them. The very purpose of obtaining insurance against loss by fire is to indemnify oneself against one's own negligence, for, as we have observed elsewhere,[2] fire loss is nearly always caused by someone's negligence. Negligent losses are, therefore, exactly the kind of losses foreseeable and contemplated under the "risk of Loss" language of this agreement, when that agreement also provides for insurance coverage.

The parties obviously intended that the property should be insured at all times for the protection of both parties. The District Court Judge stated that the defendants had an insurable interest in the property from the time they signed the Earnest Money Agreement, and that it was clearly the common interest and intent of plaintiffs and defendants that the property should be protected. We should uphold the District Court and rule that when an agreement designates one party to bear the risk of loss, and also to provide insurance coverage against loss by fire for the benefit of both parties, the second is not liable for loss occurring, even though it may be caused by his own negligence.[3]

1. Though the reasons therefore were more cogent prior to the widespread use of insurance so prevalent today.

2. *Board of Education of the Jordan School District v. Hales*, Utah, 566 P.2d 1246 (1977).

3. Compare *Bonneville on the Hill v. Sloane*, Utah, 572 P.2d 402 (1977), where this Court held that the tenant was not liable for her own negligence *because* it was reasonably contemplated that the landlord would provide the insurance against loss by fire.

MAUGHAN, J., concurs in the views expressed in the dissenting opinion of WILKINS, J.